## In re MICHEL, MAKSIK & FELDMAN, Inc.

District Court, S. D. New York.

Jan. 27, 1942.

Decree Affirmed Dec. 9, 1942.

See 132 F.2d 299.

Kaye, Scholer, Fierman, & Hays, of New York City, for Creditors' Committee.

Parker, Chapin & Flattau, of New York City, for President and Directors of Manhattan Co.

Baldwin, Todd & Young, of New York City, for Herman Loewenstein.

Beekman, Bogue, Stephens & Black, of New York City, for Clinton Trust Co.

HULBERT, District Judge.

This matter comes before the court upon petitions to review the report of a Referee in Bankruptcy acting as Special Master, who, upon an agreed statement of facts, reported that the debtor was continued as a "debtor in possession" by an order of this court dated January 8, 1936, confirming a plan of reorganization, and that the claims of the creditors who thereafter came into existence (designated as "new" creditors) have a priority as "expenses of administration" under Section 64, sub. a (1), National Bankruptcy Act, U.S.C.A. Title 11, § 104, sub. a. (1), in the distribution of the assets, which meanwhile have been liquidated, over the creditors at the date of the filing of the original petition (designated "old" creditors).

This proceeding was begun seven years ago by the filing of a petition for reorganization pursuant to Section 77B, 11 U.S.C.A. § 207, as it was then known, of the National Bankruptcy Act.

By an order dated August 6, 1935, the court found that the petition was filed in good faith; that the petitioner was unable to meet its debts as they matured and required relief under Section 77B, and continued the debtor in temporary possession of its assets, fixed the salaries of its officers during such temporary administration and from time to time extended the temporary possession of the debtor until the expiration of a reasonable period for the submission of a plan for reorganization, which was filed on December 4, 1935.

An advertised hearing was held on December 24, 1935, and certain modifica-tions were made in the proposed plan. A revised plan was thereafter submitted to the court, approved and confirmed by order dated January 8, 1936.

The proper disposition of the issues involved turns upon the interpretation of conflicting provisions of the plan and the approving order.

It was the manifest intention of the parties that a reorganization should be effected under the supervision of a Committee of Creditors, but it was the intention of the court that jurisdiction should be retained so that the court might at all times be in a position to aid the parties in carrying out the provisions of the plan of reorganization and if and when consummated, terminate this proceeding.

The revised plan provided for the payment of all claims entitled to priority and costs of administration, in cash, and for the payment of all other claims, scaled down to 70%, in seventeen installments commencing January 20, 1936, and ending March 20, 1940. It also provided for the supervision of the debtor's affairs by a Creditors' Committee, with the following powers:

1. To extend the time of any installment payment on the old claims.

2. To keep in full touch with the operations of the debtor through a representative paid by the debtor.

3. To examine the books and records of the debtor with the assistance of a Certified Public Accountant paid by the debtor.

4. The fixing of salaries of the officers of the debtor.

5. The right (a) to require the immediate liquidation of the assets of the debtor in the event that the net worth of the business of the debtor was reduced by losses sustained in operation in any calendar year by a sum exceeding $25,000 below the amount of the net worth existing on the date of confirmation of the plan, or (b) in the event that the cumulative losses sustained in operation resulted in a reduction of such net worth by a sum exceeding $50,000, or (c) in the event of a breach of any condition of the plan, or (d) of a default in the payment of any installment due general creditors.

The debtor was required to obtain consent of the Creditors' Committee to mortgage or otherwise encumber property, or assign any of its accounts receivable, or pay any dividend upon its capital stock, or authorize the payment of any bonus, extra

compensation, overdrawals or loans to any of its officers.

Thus the revised plan contemplated comprehensive creditor control.

It also contained the following specific provisions:

"14. The plan of reorganization will be carried out by revesting in the Debtor all of the assets of the Debtor, and will be consummated in the proceeding now pending for the reorganization of said Debtor corporation under Section 77B of the Bankruptcy Act.

"15. The Debtor will pay all the costs of administration and other allowances made by the Court in cash or in such security as may be satisfactory to the parties entitled to such allowances.

"16. The Court shall retain jurisdiction over the Debtor and its assets until full payment of creditors' claims above provided for shall have been made."

The order of confirmation contained, among others, the following provisions:

"6. That all of the assets, property and effects of the Debtor, whether now in existence or hereafter acquired by it, shall be deemed to be the property of the said Debtor free and clear of all claims of its creditors, and all such creditors, as well as any other persons holding or asserting claims against the Debtor, be and each of them is forever barred from making or asserting any claim against the Debtor, or against the property, assets and effects of the Debtor, except for the amount set forth in the annexed schedules."

"8. That this Court retain jurisdiction over the Debtor and its assets, property and effects until full compliance with this decree has been made. Upon such compliance having been made, the Debtor shall be entitled to apply to this Court for an order terminating this proceeding and containing such other provisions by way of injunction or otherwise as may be appropriate."

On February 19, 1936, the Creditors' Committee moved for an order resettling the order of confirmation to more clearly provide for the continued jurisdiction of the Court. The motion was denied but the learned Referee states: "It is clear from the record made at the time that this motion was argued (all proceedings before the court were stenographically reported and transcribed) that the court considered the provision made in its order adequate for the purpose of retaining its jurisdiction over the debtor and its assets."

During the intervening years the debtor carried on its business. Contracts, leases, bills of sale and other documents were, during all of this time, executed in the name of the debtor without any description or qualification to indicate that the debtor was in reorganization, merchandise was bought and sold on credit, loans were secured and repaid by the debtor.

Until June 20, 1938, the debtor met all of the installment payments provided by the plan so that the "old" creditors had then received 40% of their respective claims scaled down to 70% under the plan. Nevertheless the business was carried on, but conditions had become so acute that on Dec. 28, 1939, the Creditors' Committee unanimously resolved to further a plan of issuing notes under what was apparently intended to be a modification of the plan of reorganization, which would subordinate the balance due on claims of the "old" creditors to the current indebtedness of the "new" creditors, providing for annual payments on the notes out of profits if, as, and when, earned by the debtor.

An agreement to give effect to this modification was executed by "old" creditors whose claims amounted to $59,193.88 and was rejected by "old" creditors whose claims amount to $13,850 and was declared effective at a meeting of the Creditors' Committee held on January 22, 1940. Herman Loewenstein, one of the petitioners on this review and the largest individual creditor, was a member of the assenting creditors; the other two petitioners on this review, were among those who refused to assent. Twelve "old" creditors who had executed the subordination agreement held claims in the aggregate amount of more than $15,000 out of a total of approximately $40,000 due "new" creditors and four of these twelve "old" creditors constitute a majority of the Creditors' Committee.

But all of these efforts to salvage the business of the debtor were unavailing and, at a meeting of the Creditors' Committee held May 22, 1940, it was voted to terminate operations and the Creditors' Committee applied for and obtained an order requiring all creditors of the debtor to show cause "why this court should not resume full jurisdiction of the proceedings herein and of the assets of the debtor, and why the debtor should not be directed in accordance

therewith to turn over to the court, or such representative as may be appointed by the court, all of the assets presently in the debtor's possession, and why the court should not, after due proceedings had, direct the distribution of the assets of the debtor to such creditors or other parties who might be entitled thereto * * *".

Except to make on application to the court for permission to increase the salaries of the debtor's officers, no further application was made by anyone interested in the proceeding for any purpose until the motion by the Creditors' Committee "to resume jurisdiction" which was unopposed, and resulted in the appointment of the Special Master.

In the Matter of Jack Fischer Co., Inc., No. 62315 U.S.D.C.S.D.N.Y.[1] a petition for reorganization under Section 77B of the Bankruptcy Act was approved by me on May 15, 1935, continued the debtor in possession of its assets and a plan of reorganization was thereafter submitted and confirmed by an order dated July 13, 1935, which contained, among others, the following paragraphs (substantially identical with paragraphs 6 and 8 in the case at bar):

"(6) That all of the assets, property and effects of the debtor, whether now in existence or hereafter acquired by it, shall be deemed to be the property of the said debtor free and clear of all claims of the debtor, its stockholders and creditors, and all such creditors, as well as any other persons holding or asserting claims against the debtor, other than those listed upon the schedules annexed to this decree, and those whose claims are not to be affected by the said plan, be and each of them is forever barred from making or asserting any claim against the debtor, or against the property, assets and effects of the debtor."

"(8) That this Court retains jurisdiction over the debtor and its assets, property and effects until full compliance with this decree has been made. Upon such compliance having been made, the debtor shall be entitled to apply to this Court for an order terminating this proceeding and containing such other provisions by way of injunction or otherwise as may be appropriate."

It is to be observed that the plan of reorganization in the Fischer case did not revest the assets in the debtor as in paragraph 14 in the case at bar.

Subsequently the plan of reorganization having failed in its purpose an order of liquidation in bankruptcy followed and questions arose with respect to priorities of claims for merchandise sold prior to the institution of proceedings for reorganization and thereafter, both prior and subsequent to the confirmation of the plan. Upon a reference of those issues to Referee in Bankruptcy, Hon. John E. Joyce, as Special Master, he stated in his report:

"It does not follow, however, that the status of debtor in possession continues after confirmation of the plan. Neither the statute nor the authority cited establishes the same right in respect to debts created after confirmation. The analogy between a trustee and a debtor in possession with authority to operate is not evident after confirmation. That event, ordinarily, would be coupled with or shortly followed by a direction to the trustee, had one existed, to turn back the assets to the debtor."

"If a trustee had been appointed, it seems clear that he would have been required to transfer the assets to the debtor upon confirmation or shortly following, in order that the debtor might carry out the plan, as was its statutory duty to do, and creditors dealing with the debtor thereafter would have no standing to assert their demands as costs of administration. The retention of jurisdiction does not militate against that conclusion. Confirmation of the plan did not terminate the proceeding or end the court's jurisdiction. Subdivision (b) provides that upon termination of the proceeding a final decree shall be entered. Jurisdiction thereof continued until a final decree and was coupled with jurisdiction of the debtor and its property to the extent that it was deemed essential to enforce compliance with the decree which established the rights of the creditors whose claims were allowed and did not attempt to adjudicate the rights of creditors thereafter created. The latter possessed rights which they could doubtless pursue, but only with the consent of this court."

The learned Special Master based his decision herein upon the authority of In re Irving Electrical Supply Co., D.C.S.D.N.Y., 41 F.Supp. 16, affirmed Vogel v. Mohawk Electric Sales Co., 2 Cir., 126 F.2d 759.

This case, it seems to me, is to be distinguished by the fact that neither the plan nor the order confirming it provided for the revesting of the assets in the debtor as reorganized. The plan and the order did

---

[1] No opinion for publication.

provide that "the court shall retain jurisdiction over the debtor and its assets after a confirmation of the within arrangement, but only until the provisions of the arrangement have been performed, including without being limited to, the payment of the notes by the debtor."

In the case at bar, from the entry of the order approving the original petition continuing the debtor, and by which the debtor was only "temporarily continued in possession" of its assets, it was always referred to as "debtor in possession" subject to the control of this court and its powers were specifically defined as those of a trustee in bankruptcy or a receiver in equity and only "as debtor in possession" and "subject to such supervision and control of this court as the court may exercise by further orders" was empowered to continue its business. But the order confirming the revised plan, described the debtor "as reorganized" and fully revested all of the assets in the debtor, free and clear of all claims of its creditors, and made no attempt to define or in any way limit the powers of the debtor except that, as reorganized, the debtor was placed under the supervision of a Creditors' Committee, with the right on the part of any party in interest to apply to the court to exercise the reserved jurisdiction, or, as the Creditors' Committee interpreted it, "to resume jurisdiction."

If it had been intended to continue the limited possession of the "debtor in possession" paragraph 14 of the plan, and paragraph 6 of the order should properly have omitted the revesting of the assets in this debtor (as in the Irving Electrical case) or should have provided that the debtor herein should only be vested with title to its assets as "debtor in possession" and the phrase "revesting in the debtor all of the assets of the debtor" was wholly ineffective and purposeless if it meant that the debtor was only to have limited possession as "a debtor in possession" as it had had during the period between the approval of the petition and the confirmation of the plan.

The priority claims, the costs and allowances, and the costs of administration contemplated by the revised plan as approved, have all been paid.

If it is logical that the claims of "new" creditors created over a period of $4\frac{1}{2}$ years can be allowed as further expenses of administration, then such a condition might carry on over any given period of years, which would defeat the very purpose of reorganization, since the "old" creditors have surrendered their rights and taken a fixed position from which they could not secure relief without the concurrence of the "new" creditors.

Furthermore, the record demonstrates that all of the creditors acted upon the assumption that a reorganization had taken place, else, why should there have been an effort to subordinate the claims of the "old" creditors to those of the "new".

I cannot agree with the learned Special Master, and his determination must be reversed with a reference back for the purpose of classifying the claims accordingly.